UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BEATRICE LUEVANO | § | |
| *Plaintiff,* | § | CIVIL ACTION NO.: |
| | § | 5:14-CV-00088-DAE |
| V. | § | |
| | § | |
| GLASER TRUCKING SERVICE, INC., | § | |
| AND DONALD MITCHELL HAY, | § | |
| *Defendants.* | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE THE DESIGNATION AND TESTIMONY OF EDMOND PROVDER**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff files this her Response to Defendants' Motion to Strike the Designation and Testimony of Edmond Provder, and in support thereof would show as follows:

**INTRODUCTION**

1.      Plaintiff is BEATRICE LUEVANO; Defendants are GLASER TRUCKING SERVICE, INC. and DONALD MITCHELL HAY.

2.      Plaintiff sued Defendants for personal injury damages proximately caused and arising out of Defendants' individual and vicarious negligence after Defendant HAY rear-ended Plaintiff while in the coarse and scope of his employment as a commercial truck driver for Defendant GLASER.

3.      Plaintiff filed her complaint on January 27th, 2014. Defendant Glaser Trucking Services, Inc. served and filed an answer on March 7th, 2014. Defendant Donald Mitchell Hay served and filed an answer on March 19th, 2014. On May 23, 2014 this honorable court entered a Scheduling Order that called for the designation of experts with reports by July 7, 2014.

4.     The Defendants initial attorney of record, Ryan Todd, subsequently left the employ of the law firm hired to defend this case. Eventually the case was reassigned to attorney Ian McLin. Mr. McLin first filed a Notice of Appearance in this case on October 1st, 2014.[1] Despite some delays the attorneys for both sides cooperated with each other to get the case ready for trial without the need for an entirely new scheduling order. However, the parties did agree to request an amendment to the scheduling order setting new deadlines for written discovery, mediation, and expert depositions. Additionally, the parties by consent agreed to allow Plaintiff until December 5th, 2014 to serve unto Defendant expert reports. The agreement was specifically limited to Plaintiff's expert economist and vocational rehabilitation expert. By way of a follow up letter agreement, the Defendants were given reciprocal consideration and their deadline for producing expert reports was set at January 2, 2015. The deadline to complete expert depositions was to be February 1st, 2014. The case has not been set for trial as of yet.

5.     Plaintiff timely served onto Defendants her Designation of Experts and Expert Reports on November 3rd and December 5th, respectively. The Defendants filed a Motion to Strike Plaintiff's designations alleging that they had not received all of the underlying physical data and materials reviewed by Plaintiff's retained economist and vocational rehabilitation expert. In other words, "any **exhibits** that will be used to summarize or support..." the experts' opinions. FED.R.CIV.P. 26(a)(2)(B)(iii).

6.     The Plaintiff's retained expert Economist and expert in Vocational Evaluations and Assessments were offered up for depositions within the allotted deadline period. Defendant scheduled both depositions, but ultimately took only the deposition of Plaintiff's vocational

---

[1] The Defendants have just this past week substituted counsel once again. The new attorney in charge is Frederick Saporsky, III.

expert, Edmond Provder on January 15th, 2015. Defendants have been provided with every document and tangible thing they have requested from Mr. Provder before, during and after his deposition. Defendants did not make their own retained vocational rehabilitation expert available for a deposition until February 9th, 2015. A transcript of that deposition testimony is not yet available from the court reporter given the recency of the deposition.

**RESPONSE AND OPPOSITION TO DEFENDANTS' PURPORTED GROUNDS FOR STRIKING THE DESIGNATION AND TESTIMONY OF EDMOND PROVDER**

7.      The opinions and testimony of Plaintiffs' retained expert Edmond Provder should not be excluded under Federal Rule of Evidence 702. Mr. Provder possesses the qualifications sufficient to render his proferred opinions, which assist the trier of fact in understanding the evidence. His opinions should not be excluded because they are not conclusory nor do they lack analysis, authority, scientific support or the requisite reliability to satisfy the requirements of Federal Rule of Evidence 702. Moreover, full gatekeeper proceedings are not necessary because Defendants have not sufficiently called into question the reliability of Plaintiff's expert. Defendants offer no conflicting expert evidence in its Motion.

8.      Defendants attack the validity of the opinions of Plaintiff's Vocational Rehabilitation and Evaluation expert, Edmond Provder, yet Defendants offer no conflicting evidence establishing how Mr. Provder's opinions are unreliable. Defendants merely present arguments based on deposition testimony of Mr. Provder taken out of context and presented in a deliberately misleading manner. Defendants want this Court to rule on and decide the conclusions reached by Plaintiffs' expert. That is not the purpose of a Daubert analysis. For these reasons and as shown below, Defendants' Motion to Strike the Designation and Testimony of Edmond Provder must be denied.

## ARGUMENT & AUTHORITIES

9.      Federal Rule of Evidence 702 incorporates the Supreme Court's holding on the admissibility of expert testimony announced in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). When faced with a challenge to expert testimony (regardless of whether it is meritorious), the trial judge must determine: (1) whether the expert is qualified to offer the opinions; (2) whether the expert is proposing to offer opinions and conclusions that are based on scientific or technical knowledge; and (3) whether the testimony will assist the trier of fact to understand or determine a fact in issue. *Daubert,* 113 S.Ct. At 279. Under *Daubert*, a trial judge need not and should not determine the scientific validity of the conclusions offered by an expert witness; rather, to decide admissibility the judge should consider only the soundness of the general scientific principles or reasoning on which the expert relies and the propriety of the methodology applying those principles to the specific facts of the case. *Daubert,* 113 S.Ct. At 2797; *Watkins v. Telsmith, Inc*., 121 F.3d 984 (5th Cir. 1997); *Joiner v. General Electric Co.*, 78 F.3d 524, 530 (11th Cir. 1996).

10.      The role of the District Court in determining the admissibility of expert testimony is that of a "gate-keeper." *Seatrax, Inc. v. Sonbeck Int'l., Inc.*, 200 F.3d 358, 371 (5th Cir. 2000). The District Judge must first determine whether the proferred testimony is reliable, requiring an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid. *Daubert*, 113 S.Ct. at 2797. Second, the District Judge must determine whether that reasoning or methodology can be properly applied to the facts in issue; that is, whether it is relevant. *Daubert*, 113 S.Ct. at 2797. The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means

of attacking shaky but admissible evidence." *Daubert*, 113 S.Ct. at 2798; *U.S. v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996).). In performing a *Daubert* analysis, the Court's focus must be "solely on principles and methodology, not on the conclusions that they generate": thus, it does not matter whether the proposed expert testimony is scientifically correct, so long as it is shown to be reliable. *Daubert*, 113 S.Ct. at 2797; *Allison v. McGhan Medical Corp*., 184 F.3d 1300, 1312 (11th Cir. 1999). A trial judge need not and should not determine the scientific validity of the conclusions offered by an expert witness; rather, to decide admissibility the judge should consider only the soundness of the general scientific principles or reasoning on which the expert relies and the propriety of the methodology applying those principles to the specific facts of the case. *Joiner v. General Electric Co.*, 78 F.3d 524, 530 (11th Cir. 1996).  "Although the Daubert analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge the conclusions themselves." *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)(citing *Daubert*, 113 S.Ct. 2786; see also, *Bocanegra v. Vicmar Servs. Inc*., 320 F.3d 581, 585 (5th Cir. 2003).

11.     The *Daubert* court emphasized that trial judges must be accorded significant discretion. *Daubert*, 113 S.Ct. at 2797. The Fifth Circuit has repeatedly affirmed that the destrict courts "enjoy wide latitude in determining the admissibility of expert testimony," and "the discretion of the trial judge and his or her decision will not be disturbed on appeal unless 'manifestly erroneous.'" *Watkins v. Telsmith*, 121 F.3d at 988; *Eiland v. Westinghouse Electric*, 58 F.3d 176, 180 (5th Cir. 1995). In *Kumho Tire*, the United States Supreme Court explained its holding in *Daubert* by answering two important questions concerning motions to exclude expert testimony. First, the Court held that the trial court's gatekeeping role applies to all expert testimony. Second, the Court held that the four factors set forth in *Daubert* do not apply in all

cases. The Supreme Court has noted that the purpose of the reliability analysis is to ensure that the expert who is testifying employs the same level of intellectual rigor that characterizes the practicing expert's field. *Kumho Tire Co. V. Carmichael*, 119 S.Ct. 1167, 1176(1999). In *Daubert*, The Supreme Court set forth four factors as proper for a court's consideration in evaluating reliability. But in *Kuhmo Tire*, the Court noted that while the *Daubert* factors should be considered where they are reasonable measures of the reliability of the expert's testimony, they are not exclusive, and the trial court has broad latitude and leeway to determine whether or not they apply. *Kumho Tire*, 119 S.Ct. at 1176. Likewise, the Fifth Circuit has recognized the *Daubert* factors are not appropriately used in all instances. *Moore v. Ashland Chemicals, Inc.*, 126 F.3d 679, 688 (5th Cir. 1997). Rather than blindly apply the *Daubert* factors, the trial court, in executing its gatekeeper function, should look to the principles, methods, and procedures of the particular field of knowledge involved. *Moore*, 126 F.3d at 686-87.

12.    Rule 702 simply requires that scientific testimony be grounded in the methods and procedures of science and that when an expert testifies in court, he adheres to the "same level of intellectual rigor" that the expert would use in the regular course of her professional work. Kumho Tire, 119 S.Ct. at 1176. In summary, a gatekeeper determination under Rule 702 consists of three inquires. First, is the expert qualified to express the opinion? Second, is the opinion reliable, i.e., is there to great of an analytical gap? Finally, is the opinion relevant, i.e., will it help the jury to understand the evidence or to determine a fact in issue? As is shown below, Plaintiff has established that Mr. Provder's expert testimony and reports are relevant and reliable, and that his expertise is supported by his knowledge, skill, experience, training, and education. Because those opinions are supported by the evidence and data, there is no analytical gap and these reliable and relevant opinions should be admissible. Accordingly, Defendants' Motion to Strike

the Designation and Testimony of Edmond Provder should be denied.

## EVIDENCE RELIED UPON

13.    The evidence in this Response supplies more than a sufficient basis for denying the Defendants' Motion to Strike. However, should the Court require additional evidence, Plaintiff requests the opportunity to present expert testimony live at a Daubert hearing. This testimony will provide additional evidence to support the admissibility of Plaintiff's expert opinion testimony. But, in addition to this potential live testimony, Plaintiff offers the following evidence, which, even alone, is sufficient to support the admissibility of Plaintiff's expert testimony:

    a.    Edmond Provder's Affidavit, attached as Exhibit "A";

    b.    Edmond Provder's Expert Report, attached as Exhibit "B;

    c.    Edmond Provder's condensed deposition transcript, attached as Exhibit "C";

    d.    Medical records (part one) from the file of Edmond Provder, attached as Exhibit "D";

    e.    Medical records (part two) from the file of Edmond Provder, attached as Exhibit "E"; and,

    f.    Medical records (part three) from the file of Edmond Provder, attached as Exhibit "F".

14.    This evidence, alone or in conjunction with live testimony (if requested by the Court), provides a solid and reliable foundation for the admission of Plaintiffs' expert testimony, which testimony is both reliable and relevant in this case. The following sections detail the standard of review, the legal authorities, and provide in-depth analysis of the basis and support

for the Plaintiff's expert opinions. Because Plaintiff's expert, Edmond Provder, is well qualified

and his opinions are reliable and relevant, Defendants' Motion to Strike should be denied.

### EDMOND PROVDER IS QUALIFIED AND HIS TESTIMONY IS RELIABLE AND RELEVANT

15.     Mr. Provder's qualifications have not been attacked or put in issue by Defendants'

Motion to Strike. Mr. Provder has extensive education, training and experience in the very things

at issue in this case – namely the loss of earning capacity damages suffered by Plaintiff Beatrice

Luevano. Mr. Provder is a certified rehabilitation counselor and a Diplomate with the American

Board of Vocational Experts. He obtained bachelors and masters degrees in Rehabilitation

Counseling from Pennsylvania State University in 1971 and 1973, respectively. He was also a

doctoral candidate in Rehabilitation Counseling at New York University. He completed 42

credits toward his doctorate. He has served as a vocational consultant since 1973. In that capacity

he has administered, developed, and supervised vocational rehabilitation programs, including

vocational evaluation testing centers and sheltered workshops, or numerous organizations

including Mount Sinai Hospital, the South Beach Psychiatric Center, the State Island Association

for the Visually Handicapped and the Contemporary Guidance Service in New York. Mr.

Provder is credentialed by the American Board of Vocational Experts, the Commission on

Rehabilitation Counselor Certification, and the International Academy of Life Care Planners. He

has provided rehabilitation services and evaluated the vocational and employability potential of

thousands of individuals throughout his career.  As an expert, Mr. Provder has served as a

Vocational Expert for the Social Security Administration for nearly a decade by providing

impartial vocational testimonies in over 2,500 Social Security Disability Hearings, and he has

provided expert witness testimonies in hundreds of cases in federal and state courts throughout

the country. His expert testimony has been accepted in federal and state courts in New York, New Jersey, Pennsylvania, Maine, Massachusetts, Florida, New Hampshire, Connecticut, Ohio, Wisconsin, Illinois, North Carolina, and Texas. He is a recognized authority and expert in the field of rehabilitation counseling and vocational assessments for the New Jersey Division of Vocational Rehabilitation Services, The New Jersey Commission for the Blind and Visually Impaired and the New York Commission for the Blind and Visually Handicapped. He consulted with the State of New York in developing a program for Vocational Expert testimony in Workers' Compensation cases. Mr. Provder's education, training, and experience easily satisfy the threshold qualification requirements of FED. R. EVID. 702.

16.     Plaintiff has alleged economic damages of loss of wage earning capacity as a result of the rear-end collision accident made the basis of the underlying suit. Mr. Provder's opinions in this case are clearly relevant to the issue of Plaintiff's loss of earning capacity damages. In this case Mr. Provder's has provided opinions that assess Plaintiff's employability and Earning Capacity taking into account her residual physical and functional capacity. He provides opinions as to Plaintiff's vocational limitations. Namely, that given Ms. Luevano's physical functional limitations she is unable to perform any medium, heavy, or very heavy work existing in the local or national economy on a sustained, full-time, regular, competitive basis. Because of her severe physical limitations and pain, Mr. Provder's vocational assessment and evaluation concludes that Ms. Luevano has been unable to pursue her vocational goal of mammography or continue in her past employment as a Radiographic Technician on a full-time basis. Even though she has been able to return to her past employment as a licenced vocational nurse, the difference in the wages for this "semi-skilled" job and the skilled job of Radiographic Technician is the measure of her loss of wage earning capacity in this case. It is the longstanding

and clearly defined principle in Texas that the proper measure of damages in a personal injury case is loss of earning capacity, rather than loss of earnings in the past. *Dallas Railway & Terminal v. Guthrie*, 210 S.W.2d 550(Tex. 1948); *T.J. Allen Distributing Co. V. Leatherwood*, 648 S.W.2d 773 (Tex.App.–Beaumont 1983, writ ref'd n.r.e.). Texas law defines "Earning Capacity" as the ability and fitness to work in gainful employment for any type of remuneration, including salary, commissions, and other benefits, whether or not the person is actually employed. "Loss of Earning Capacity" does not necessarily mean the loss of actual wages, income, or other benefits during the period inquired about. *Metropolitan Life Ins. Co. v. Haney*, 987 S.W.2d 236, 244 (Tex.App.–Houston [14th Dist.] 1999, pet. denied). An unemployed person can recover for loss of earning capacity. *Brazoria Cty. v. Davenport*, 780 S.W.2d 827, 832 (Tex.App.–Houston [1st Dist.] 1989, no writ). Factors such as stamina, efficiency, the ability to work with pain, and the weakness and degenerative changes which naturally result from an injury **and from long suffered pain** are legitimate considerations in determining whether or not a person has experienced an impairment in future earning capacity (emphasis added). *Springer v. Baggs*, 500 S.W.2d 541, 544 (Tex.Civ.App.-Texarkana 1973, writ ref'd n.r.e.); *Border Apparel-East, Inc. v. Guardian*, 868 S.W.2d 894 (Tex.App.-El Paso 1993, no writ). The loss of earning capacity that a person will suffer in the future is always uncertain and left largely to the jury's sound discretion. *Wal-Mart Stores, Inc. v. Ard*, 991 S.W.2d 518, 522-523 (Tex.App.–Beaumont 1999, pet. denied.) Defendants' Motion to Stike purports to be based on reliability and relevance grounds. However, Defendants make only passing reference to the relevance of the expert's testimony. In fact, apart from a wholly unsubstantiated statement that the expert's conclusions are "irrelevant to the present litigation". No discussion can be found in Defendants' motion addressing the relevance of this expert's testimony.

17.     Defendants' Motion to Strike also purports to take issue with the reliability of Mr. Provder's expert opinions. They challenge Mr. Provder's "principles and methodology" utilized in reaching his conclusions in this case. However, Defendants offer no conflicting expert evidence of alternative principles or methodologies generally accepted in the field of vocational assessment of employability and earning capacity. Moreover, Defendants never even attempt to explain how any methodology or principles used by Mr. Provder in forming opinions in this case was incorrectly utilized or applied to the facts in this case. They spend the bulk of their motion attacking the expert's conclusions by misrepresenting his deposition testimony[2],[3], all the while ignoring the methodologies and principles employed. This is in stark contrast to the stated goals in *Daubert* practice as announced repeatedly by the Fifth Circuit.[4]  All the assumptions and methodology of Mr. Provder's expert opinions were summarized and explained in his report dated November 25, 2014 and his deposition of January 15, 2015. Defendants make no attempt to specifically address any part of the methodology or principles employed by Mr. Provder in his analysis or provide any contrary methodology or interpretation of the bases or sources used by

---

[2]   Defendants repeatedly stated in their motion that Mr. Provder had testified that the Plaintiff is capable of working as a nurse, radiographic technician or mammographer. This is false or at least intentionally misleading. Mr. Provder testified that the Plaintiff could engage in these jobs, as long as she does them in a sedentary or light-type capacity. See Exhibit C, pg. 47, lines 14-20. The job of radiographic technician, as she was required to perform it, was classified as light to very heavy work.

[3]   Defendants claim in their Motion that Plaintiff's medical records do not show any physical limitations. This is not true. The medical records reviewed by Mr. Provder include ambulance run reports, ER reports, x-rays, MRI reports, records from her local medical clinic and reports from a spine specialist. The records demonstrate consistent reports of pain and limited range of motion to Ms. Luevano's neck and low back. Additionally, sleep disturbances and difficulty with activities of daily living are also noted in the records. At deposition Mr. Provder was never asked about the limitations noted throughout the entirety of the file. He was only asked whether any physician had put Ms. Luevano on any physical or work restrictions.

[4]   As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration. It is the role of the adversarial system, not the court, to highlight weak evidence. *Primrose Operating Co. v. National Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) *citing United States v. 14.38 Acres of Land, More or Less Situated in Leflore County*, 80 F.3d 1074, 1077 (5th Cir. 1996)

Mr. Provder.[5]

## CONCLUSION

As shown herein, Plaintiff's vocational expert's opinions in this case are both reliable and relevant. Defendants' challenge to Plaintiff's expert should be denied and their Motion to Strike the Designation and Testimony of Edmond Provder should also be denied in its entirety.

Respectfully submitted,

**KNICKERBOCKER, HEREDIA,
JASSO & STEWART, P.C.**
468 Main Street
Eagle Pass, Texas  78852
borderlawyer@hotmail.com
Tel:  (830) 773-9228
Fax:  (830) 773-2582

By:   /s/ Marco A. Salinas
          **Marco A. Salinas**
          State Bar No. 00794583

**ATTORNEYS FOR PLAINTIFF**

---

[5]  In his report and deposition Mr. Provder mentions the various methods used in his vocational assessment and evaluation in this case. Among those methods used is the RAPEL method which consists of five sections; (1) Rehabilitation Plan; (2) Access to Labor Market; (3) Placeability; (4) Earnings Capacity; and, (5) Labor Force Participation. He goes on to explain that this method is peer reviewed and has been used by vocational experts for over 13 years.

## CERTIFICATE OF SERVICE

On   20th   day of February, 2015, I certify that a true and correct copy of Plaintiff's Response to Defendants' Motion to Strike the Designation and Testimony of Edmond Provder was served on the Defendants' attorney of record as listed below in accordance with the Federal Rules of Civil Procedure:

Fredrick Saporsky III
LAW OFFICE OF MARK E. MACIAS
1100 Northwest Loop 410, Suite 370
San Antonio, Texas 78213
(210) 949-0166 tel.
(855) 949-1338 fax
saporf1@nationwide.com


                                                    /s/ Marco A. Salinas
                                                **Marco A. Salinas**